IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY HIGDON, AS TRUSTEE
OF THE LIFE INSURANCE TRUST
DATED NOVEMBER 1, 1991,

    *Plaintiff,*

    v.

                            Civil Action No. ELH-13-2152

LINCOLN NATIONAL
INSURANCE CO. ET AL,

    *Defendants.*

## MEMORANDUM OPINION

Plaintiff Jeffrey F. Higdon, as Trustee of the John J. Germenko Life Insurance Trust Dated November 1, 1991 (the "Trust"), seeks to recover the death benefits of $300,000 he claims are payable on a life insurance policy issued to John J. Germenko (the "Policy") in 1985, which is the corpus of the Trust. Higdon alleges that defendants Lincoln National Insurance Company ("Lincoln") and ING Life Insurance and Annuity Company ("ING") have breached the Policy by refusing to pay the benefits due as a result of Mr. Germenko's death on June 16, 2010.[1] The issue currently before the Court is whether the Court has subject matter jurisdiction over the case.

The original complaint in this action (ECF 2, "State Complaint") was filed in 2013 in the Circuit Court for Howard County, Maryland by Mr. Germenko's two daughters, Barbara Germenko Wright and Deborah Ann Germenko Tharp, individually and, as to Ms. Tharp, as

---

[1] The Policy was originally issued by Aetna Life Insurance and Annuity Company ("Aetna"), but ING became the successor to Aetna in 2000. ECF 1 ¶ 6; ECF 10 ¶ 1. The Amended Complaint alleges that Lincoln is the "administrative agent for ING." ECF 10 ¶ 1.

personal representative of the estate of Winifred M. Germenko (collectively, the "Germenkos"). Lincoln and ING (collectively, the "Insurers" or "defendants") removed the case to this Court, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 (diversity of citizenship). ECF 1 ("Notice of Removal"). In so doing, the Insurers certified their belief, based on the face of plaintiffs' State Complaint, that this Court would have had "original jurisdiction" if the State Complaint had been filed in federal court. *See* ECF 1.

In their Answer (ECF 9), the Insurers denied that the Germenkos were the named beneficiaries under the Policy. Thereafter, Higdon, as Trustee of the Trust, filed an Amended Complaint, naming himself as the sole plaintiff. ECF 10. The Insurers then filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). ECF 11 ("First Motion").

In their First Motion, the Insurers argued that the Germenkos lacked standing to sue Lincoln and ING. The Insurers noted that, in the State Complaint, the Germenkos alleged that they were each "named beneficiaries" of the Policy. *See* ECF 2 ¶¶ 5, 6, 7. Defendants did not dispute that named beneficiaries would have standing to sue. Rather, they asserted that the allegations in the State Complaint are incorrect because, in fact, the Trust is the sole named beneficiary of the Policy. ECF 11. On this basis, the Insurers argued that the Germenkos lacked standing to sue the Insurers at the time they filed the State Complaint.

Claiming that standing is jurisdictional in federal courts, and that jurisdictional defects cannot be cured by post-removal substitution of parties, the Insurers argued that this Court lacks subject matter jurisdiction. Therefore, they asked this Court to dismiss the case. I denied

defendants' First Motion, with leave to renew after the parties provided additional briefing, as requested by the Court.  *See* ECF 20 (Memorandum).

Now pending is defendants' renewed motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).  *See* ECF 22, "Motion;" ECF 22-1, "Memo."  The Insurers make the same basic argument here as was lodged in their First Motion.  Plaintiff opposes the Motion (ECF 26), and has submitted a memorandum in support of his opposition. *See* ECF 26-1, "Opposition").  Defendants have replied.  (ECF 27, "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I conclude that this court lacks subject matter jurisdiction.  Therefore, I shall grant the motion in part, but deny it in part, *i.e.*, I shall deny the request for dismissal.  Instead, I shall remand the case to the Circuit Court for Howard County, Maryland, pursuant to 28 U.S.C. § 1447(c).

## Factual Background

As noted, the Germenkos filed their State Complaint in 2013.  ECF 2.  It contained one count, for breach of contract.  *Id*. at 7-9.  The contract dispute turns on whether the Policy was in force when Mr. Germenko died on June 16, 2010.  *Id*. ¶ 13.  *See id.*  The Germenkos alleged that in January 1985, Mr. Germenko contracted for a "flexible premium adjustable life policy" with "an initial specified amount of $300,000.00."  *Id*. ¶ 10.  They asserted that "[a]t all relevant times," Mr. Germenko "was the owner of the Policy and the Plaintiffs [the Germenkos] are the named beneficiaries of the Policy."  *Id*. ¶ 10; *see also id.* ¶¶ 5, 6, 7, 24.  In the suit, they did not mention the Trust.  ECF 2.

The Insurers removed the case to this federal court on July 25, 2013.  ECF 1.  In their Notice of Removal, defendants stated that the action was "properly removed under 28 U.S.C. § 1441 (removal jurisdiction) because the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction)."  *Id.* ¶ 12.  In support, they stated the following:  two of the Germenkos are citizens of Florida, *id.* ¶¶ 4, 5; the third is a citizen of North Carolina, *id.* ¶ 3; Lincoln is a citizen of New York and Pennsylvania, *id.* ¶ 7; ING is a citizen of Connecticut, *id.* ¶ 8; and the amount in controversy ($300,000) exceeds $75,000, *id.* ¶ 10.  They also stated that each of the Germenkos was an "alleged beneficiary" of the Policy.  ECF ¶¶ 3, 4, 5.

Defendants answered the State Complaint on August 1, 2013.  ECF 9, "Answer."  In their Answer, defendants denied that the Germenkos "were the named beneficiaries" of the Policy "at the time of" Mr. Germenko's death.  Answer ¶ 1.  They also asserted, as an affirmative defense, that the Germenkos "lack standing to maintain any of the claims alleged in the complaint because they were not the named beneficiaries of the policy at the time of death of Mr. Germenko."  Answer at 6.

On August 22, 2013, as a matter of course under Fed. R. Civ. P. 15(a)(1)(B),[2] the Germenkos filed an Amended Complaint.  ECF 10.  The Amended Complaint removed the Germenkos as plaintiffs and substituted Jeffrey F. Higdon, Trustee of the Trust, as plaintiff.  *Id.* It also alleged that the Trust "is the beneficiary" of the Policy.  *Id.* ¶¶ 1, 22.  According to the allegations, the Germenkos were the named beneficiaries of the Policy when it was originally

---

[2] Under Fed. R. Civ. P. 15(a)(1), a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

issued, but "[i]n or about November 1991, the Trust became the sole beneficiary of the Policy." *Id.* ¶ 8.

On September 9, 2013, defendants filed their First Motion.  ECF 11.  They asserted that the Amended Complaint constituted an admission that the Germenkos were not the beneficiaries of the Policy "at the time of [Mr. Germenko's] death, at the time the complaint was filed, or at the time of removal."  ECF 11-1 (Memo) at 7.  Thus, defendants argued that 1) the Germenkos did not have standing to sue the Insurers at the time they filed the State Complaint; 2) therefore, the Court lacked subject matter jurisdiction at the time of removal; 3) jurisdictional defects existing at the time of removal cannot be cured by post-removal substitution of parties; and 4) this Court thus lacks subject matter jurisdiction.  ECF 11-1 at 1-2.

Plaintiff opposed the motion (ECF 18), and defendants replied (ECF 19).  With his opposition, plaintiff submitted matters outside the pleadings, including a Policy description and application (ECF 18-2, 18-3), the Trust Agreement (ECF 18-4), the "Change of Beneficiary" form (ECF 18-5), and the "Change of Ownership" form (ECF 18-6).

The Change of Beneficiary form appears to have been signed by Mr. Germenko on November 19, 1991.  ECF 18-5 at 2.  It does not indicate when the insurer (at that time, Aetna) accepted the form.  *Id.*  It designated Jeffrey F. Higdon, as Trustee "under trust agreement dated November 1, 1991, John J. Germenko Life Insurance Trust."  The Change of Ownership form appears to have been signed by Mr. Germenko on January 8, 1992; it lists the same new owner (Higdon); and it was accepted by the insurer (Aetna) on January 21, 1992.  ECF 18-6 at 2.  A second Change of Ownership form, signed by Higdon in the name of the Trust on March 6, 2000, and accepted by the insurer on March 16, 2000, appears to reaffirm that the Trust is the

owner of the Policy; the box checked simply indicates that "the insured" is "to be owner." ECF 18-6 at 3.

The Trust Agreement establishes a series of contingent interests in the Policy funds.[3] Section 2.02, titled "Protection Against Loss of Marital Deduction for Qualifying Property and Distribution of Assets," directs the Trustee to disburse funds *first* to "the Grantor's spouse" and/or her estate, in such amount "as may be necessary" to reduce estate taxes in a specified way. Trust Agreement at 13. The "Grantor's spouse" is not specified in the Trust Agreement, but plaintiff has explained that Mr. Germenko's spouse, at the time of the creation of the Trust and at his death, was Catherine Germenko. ECF 25-1 at 4.[4]

Section 2.02 further instructs the Trustee to "pay over and distribute all of the accumulated and unpaid income and remaining principal of the trust estate, *after compliance with* [Section 2.02] as provided in Section 2.03." *Id.* (emphasis added). Section 2.03(a) states, *id.* at 14:

> Upon Grantor's death, and upon compliance with the provisions of Section 2.02 of this Trust Agreement, the Trustee shall distribute to Grantor's former wife,[5] _____ such amount as is required under the Property Settlement Agreement Grantor executed with her and which agreement was incorporated in the divorce decree entered in Howard County, Maryland. The Trustee shall allocate all of the remaining accumulated and unpaid net income and remaining principal of this Trust into two equal shares to be administered and distributed in the following manner:

---

[3] Defendants dispute the authenticity of the Trust Agreement. ECF 24 at 8-9.

[4] Catherine Germenko is not the mother of the decedent's two daughters, who were the original plaintiffs.

[5] The "Grantor's former wife" is not specified in the Trust Agreement, and no name is entered in the blank, as represented above. Plaintiff asserts that this term refers to Winifred Germenko, *see* ECF 25-1 at 4; *see also* State Complaint ¶ 7 ("Winifred Germenko was the biological mother of Wright and Tharp and the former wife of Mr. Germenko … ."). Defendants dispute this. ECF 24 at 10-11.

(1) One equal share shall be allocated to the BARBARA J. WRIGHT SHARE to be administered and distributed subject to the provisions of paragraph (b) of this Section 2.03, and

(2) The other equal share shall be allocated to the DEBORAH G. THARP SHARE to be administered and distributed subject to the provisions of paragraph (c) of this Section 2.03.

Section 2.03(b) states, in relevant part:  "The assets allocated to the BARBARA J. WRIGHT SHARE shall be distributed to her and this trust on her behalf shall terminate."  *Id.*

I denied the First Motion in a Memorandum Opinion (ECF 20) and Order (ECF 21) of April 21, 2014.  I also asked the parties to submit additional briefing related to the standing of trust beneficiaries to bring contract claims, and granted defendants leave to refile their motion after their additional submissions.  ECF 21.

The parties submitted the requested briefings in May 2014.  ECF 24 (defendants); ECF 25-1 (plaintiff).  Plaintiff also filed an Affidavit of Higdon (ECF 25-2).  The Insurers filed the pending Motion the same day as they filed their brief.  ECF 22.

**Standard of Review**

The Insurers filed the Motion pursuant to Fed. R. Civ. P. 12(b)(1).  ECF 22 at 1.  "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp.

2d 730, 736 (D. Md. 2001).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns,* 585 F.3d at 192; *see also Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).  In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns,* 585 F.3d at 192.  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may ... resolve the jurisdictional facts in dispute by considering evidence ... such as affidavits.") (citation omitted).

Defendants argue that they have brought only a facial challenge.  They state: "Defendants' motion to dismiss is a facial challenge to subject matter jurisdiction and relies solely on the pleadings."  Memo at 4.  They conclude:  "Accordingly, analysis of subject matter jurisdiction should be limited to the pleadings."  *Id*.  However, defendants believe that "the pleadings" include both the State Complaint and the Amended Complaint.  *See* Memo at 8 (arguing Court should consider new allegations in Amended Complaint as judicial admissions that show facts alleged in State Complaint were incorrect).

Plaintiff urges the Court to consider the Motion as bringing "both facial and factual challenges to subject matter jurisdiction."  Opposition at 6.  He reasons, *inter alia*:  "An

argument that jurisdictional allegations are untrue is a factual challenge to subject matter jurisdiction." *Id*. at 8.

Higdon correctly points out that "this is an issue for the Court to decide." *Id*. at 6. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) ("[I]n determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and *may* consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (emphasis added); *McBurney v. Cuccinelli*, 616 F.3d 393, 409 (4th Cir. 2010) (Gregory, J., concurring) (stating "that a district court *may*, but is not *required*, to consider" materials outside the pleadings in determining standing on a motion to dismiss) (emphasis in original) (citing *Richmond,* 945 F.2d at 768).

There is no doubt that defendants have raised a factual challenge to the allegations in the State Complaint.  In their Motion, they summarized the argument in their First Motion as follows:  "[The Insurers] moved to dismiss … for lack of subject matter jurisdiction because the amended complaint conceded the original plaintiffs were not, *in fact*, 'named beneficiaries' of the policy at the time of Mr. Germenko's death, and, as such, the original plaintiffs lacked standing to file suit."  Memo at 3 (emphasis added).  The Motion renews the arguments in the First Motion.  Like the First Motion, the Motion brings a factual challenge to the State Complaint.

Defendants are correct that the State Complaint is the operative pleading for purposes of determining this Court's jurisdiction over a case brought on removal.  As defendants point out, Memo at 5-6, federal jurisdiction is "fixed at the time the complaint or notice of removal is filed."  *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008) (holding

party's change in citizenship after filing would not defeat Court's diversity jurisdiction) (citing *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)). Thus, on removal, courts look to "'the state of the pleadings and the record at the time of the application for removal … .'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906)), *cert. denied*, — U.S. —, 134 S. Ct. 986 (2014). This means that post-removal amendments to the complaint are not to be considered. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 443 (4th Cir. 2005) ("Because amendment occurred after removal, we look at the original complaints rather than the amended complaints in determining whether removal was proper. *See Pullman Co. v. Jenkins,* 305 U.S. 534, 537 (1939)."); *Pullman*, 305 U.S. at 537 ("The second amended complaint should not have been considered in determining the right to remove, which … was to be determined according to the plaintiffs' pleading at the time of the petition for removal."). Neither side disputes this. *See* Memo at 5; Opposition at 9-11, 11 n.14.[6]

_____

[6] If the Germenkos had originally filed suit in this Court, jurisdictional defects in the original complaint could be cured by amendment. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); *see also Daniels v. Arcade, L.P.*, 477 F. App'x 125, 129-31 (4th Cir. Apr. 24, 2012) (rejecting argument that district court lacked jurisdiction where plaintiffs lacked standing when they filed the original complaint, but it was "undisputed" that a plaintiff had gained standing before filing the operative, amended complaint); *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126-27 (8th Cir. 1998) (affirming jurisdiction where the original plaintiff, a debtor who filed bankruptcy, "did not have standing under either [A]rticle III or Nebraska law to pursue her action," but cured the defect by substituting "the bankruptcy trustee as the plaintiff in this case" under the federal rule governing failure to bring a case in the name of the real party in interest, Fed. R. Civ. P. 17).

However, when, as here, a case is brought to federal court on removal, jurisdiction is determined at the time of removal, and subsequent amendments cannot defeat or confer jurisdiction. *See*, *e.g.*, *Francis*, *supra*, 709 F.3d 362; *HCR Manorcare Health Servs. Chevy Chase v. Salakpi*, RWT-09-02614, 2010 WL 1427428, at *2 (D. Md. Apr. 8, 2010) (citing cases). Because removal is defendants' prerogative, amendments to pleadings are generally brought by plaintiffs seeking to defeat federal jurisdiction. *E.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

Accordingly, to determine whether this Court has jurisdiction, I must look to the allegations in the State Complaint, not the Amended Complaint. *See Francis*, 709 F.3d at 367. I will consider the allegations as well as materials submitted by plaintiff, outside the pleadings. *See Richmond*, 945 F.2d at 768.

### Discussion

### 1.

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, … to the district court of the United States for the district and division embracing the place where such action is pending."  Under 28 U.S.C. § 1447(c), if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the State court. *See also Roach v. W. Va. Regional Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996) ("The plain language of § 1447(c) gives 'no discretion to dismiss rather than remand an action' removed from state court over which the court lacks subject-matter jurisdiction.") (quoting *Int'l Primate Protection League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991)); *accord Virginia v. Banks*, 498 F. App'x 229, 230 (4th Cir. 2012).

---

343, 358 (1988) (holding district court has discretion to keep or remand non-diverse, removed case when plaintiff drops federal claim); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938) (holding plaintiff cannot defeat federal jurisdiction by amending complaint, post-removal, to reduce amount in controversy).  Thus, the rule generally prevents forum manipulation.  *See Rockwell Int'l Corp.*, 549 U.S. at 474 n.8 (noting post-removal amendments to complaints do not defeat federal jurisdiction and that "removal cases raise forum-manipulation concerns").

In certain respects, a federal court's jurisdiction depends upon a plaintiff's standing.  In federal courts, standing refers to both "the jurisdictional requirements of Article III and the prudential limits on its exercise." *United States v. Windsor*, — U.S. —, 133 S. Ct. 2675, 2687 (2013); *see also*, *e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, — U.S. —, 134 S. Ct. 1377, 1387-88 (Mar. 25 2014).  The jurisdictional standing requirements derive from the "case or controversy" limitation in § 2 of Article III of the Constitution.  *E.g.*, *Hollingsworth v. Perry*, — U.S. —, 133 S. Ct. 2652, 2662 (2013).

Accordingly, on removal, as in any other case, it must be shown not only that the district court has subject matter jurisdiction under one of the categories enumerated in Article III § 2, but also that that there exists a "case or controversy" within the meaning of the same section.  More specifically, the case or controversy limitation "requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth*, 133 S. Ct. at 2662 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Hollingsworth*, 133 S. Ct. at 2662.

Standing "in federal court is a question of federal law, not state law." *Hollingsworth*, 133 S. Ct. at 2667 (holding authorization by the State of California for party to defend ballot initiative in court not dispositive of federal standing question); *see also*, *e.g.*, *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 262 n.8 (1977) ("Illinois may choose to close its courts to applicants for rezoning unless they have an interest more direct than

[plaintiff's], but this choice does not necessarily disqualify MHDC from seeking relief in federal courts for an asserted injury to its federal rights."). In *Hollingsworth*, 133 S. Ct. at 2667, the Supreme Court said: "The Article III requirement that a party invoking the jurisdiction of a federal court seek relief for a particularized injury serves vital interests going to the role of the judiciary in our system of separated powers." Thus, "States cannot alter that role simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." *Id.*

That said, where state-created interests are at issue, state law certainly plays a part in the determination of federal standing. In such cases, federal courts look to state law to aid in the definition of the "injury" a plaintiff may assert to meet Article III requirements. *See, e.g.*, *Avenue CLO Fund Ltd. v. Bank of America, N.A.*, 709 F.3d 1072, 1077 (11th Cir. 2013) (considering New York law to determine whether plaintiffs had a "legally protected interest" in a credit agreement, as required to "establish standing for Article III purposes") (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("[A] plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a [breach of contract] cause of action.") (alterations in *Avenue*)); *Scanlan v. Eisenberg*, 669 F.3d 838, 842 (7th Cir. 2012) (considering Illinois law to determine nature of trust beneficiary's legally protected interest for purposes of Article III "injury"); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("We agree with the Seventh Circuit that state law can create interests that support standing in federal courts. If that were not so, there would not be Article III standing in most diversity cases, including run-of-the-mill contract and property disputes."); *see also Beyond Systems, Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748,

761 (D. Md. 2013) (Messitte, J.) ("In order to have standing in federal diversity cases … , a plaintiff must satisfy both state *and* federal standing requirements.") (Emphasis in original).

Indeed, in *General Technology Applications*, *Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004), the Fourth Circuit reiterated the importance of looking to state law to ensure federal courts do not alter state-created rights.  *Id.*  There, the Fourth Circuit said, *id.*:

> In a diversity case, we must consult state law to determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes. *See Gallagher v. Cont'l Ins. Co.,* 502 F.2d 827, 832–33 (10th Cir. 1974); *cf.* [*Elk Grove*, 542 U.S. at 16] (looking to state law).  A litigant bringing a diversity action (or seeking removal on that basis) can have no greater ability to assert legal rights created under state law than it would have in the state forum.

In any case, on removal, "'[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'"  *Id.* (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (alterations in *Dixon*) (quoting *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994))).   "We are obligated to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated."  *Id.* (citation omitted).

Here, Maryland law creates and defines the Germenkos' asserted contract right.  *See* State Complaint at 3 (alleging "all the material events, including Mr. Germenko's purchase of the Policy, his death and subsequent breach of contract occurred in Howard County, Maryland"); *id*. at 7-9 (alleging common law breach of contract violation).  Neither side has asserted that the law of another state applies.  *See* Memo, Opposition, Reply.  To the contrary, both sides rely on Maryland law for their arguments.  *See*, *e.g.*, Opposition at 9-10; Reply at 5-6.

## 2.

Defendants argue that formerly named beneficiaries, such as the Germenkos, do not have standing, because "parties who are not the named beneficiary at the time of death [of the insured]

lack standing to sue a life insurer." Reply at 6.  They cite a rather dated case, *Smith v. Baltimore & O. R. Co.*, 81 Md. 412, 415, 32 A. 181 (1895), for the proposition that "[o]nly the person named" as beneficiary to a life insurance policy "has the right" to bring a contract action against the insurer.

Plaintiff disagrees.  He asserts that the Germenkos "had third party standing under Maryland law … to bring the original breach of contract action because they were the original named beneficiaries under the Policy and the Policy, a contract between Mr. Germenko and Defendants, clearly intended that Original Plaintiffs benefit from it."  Opposition at 9; see ECF 18-1 at 7-9 (Opposition Memo to First Motion).  In other words, plaintiff argues that the Germenkos had standing as third-party intended beneficiaries of the Policy.

"The original rule of the common law was that privity between the plaintiff and the defendant is requisite to maintain an action on a contract, even though the contract is for the benefit of a third person." *Mackubin v. Curtiss-Wright Corp.*, 190 Md. 52, 56, 57 A.2d 318, 320 (1948).  "Ever since 1866, however, Maryland, like most other jurisdictions, has recognized the doctrine of third party beneficiary." *Parlette v. Parlette*, 88 Md. App. 628, 637, 596 A.2d 665, 669 (1991) (Motz, Diana, J.).  "That doctrine permits a person for whose benefit a contract is made to maintain an action on it without any privity of contract." *Id.*, 596 A.2d at 669-70.

Thus, under Maryland law, "[t]here can be no doubt that … the original named beneficiary" to an insurance policy "has standing as a third party beneficiary to sue for breach of contract." *Milbourne v. Conseco Servs., LLC*, 181 F. Supp. 2d 466, 468 (D. Md. 2002) (Davis, J.) (citing *Parlette*, 88 Md. App. at 637-38, 596 A.2d at 670); *see also Colden v. W. Coast Life Ins. Co.*, RDB-12-1691, 2013 WL 1164922, at *4 (D. Md. Mar. 19, 2013) ("[B]ecause Maryland

law recognizes the doctrine of third-party beneficiary, *Parlette,* 596 A.2d at 669–70, these Plaintiffs — the named beneficiaries of Mr. Weedon's insurance policy — may maintain this contract action.").

"In order for a person to recover as a third party beneficiary, he or she must show that the parties to the contract clearly intended that the third party benefit from it." *Id.*, 596 A.2d at 670 (citing *Shillman v. Hobstetter*, 249 Md. 678, 687, 241 A.2d 570, 575 (1968)). Moreover, it "'must clearly appear that the parties [to the contract] intend to recognize him as the *primary party* in interest and as privy to the promise.'" *Shillman*, 249 Md. at 688, 241 A.2d at 575 (quoting *Marlboro Shirt Co. v. American District Telegraph Co.*, 196 Md. 565, 569, 77 A.2d 776, 777 (1951)) (emphasis added). "An incidental beneficiary," in contrast, is "one who benefits from the contract although the benefit was not specifically intended or planned by the contracting parties." *Parlette*, 88 Md. App. at 637, 596 A.2d at 670. An incidental beneficiary "has no rights against the promisee or promisor." *Id.*

Comments to § 302 of the Restatement (Second) of Contracts (1981) provide helpful illustrations of the difference between an intended and an incidental beneficiary, as follows:

> 4. A, an insurance company, promises B in a policy of insurance to pay $10,000 on B's death to C, B's wife. C is an intended beneficiary … .

> 20. A, an insurance company, promises B in a policy of insurance to pay $10,000 on B's death to C as trustee for B's wife D. C is an intended beneficiary and may enforce his rights as trustee; D's rights as beneficiary of the trust and the contract are enforceable only in the manner in which rights of other trust beneficiaries are enforced.

*Parlette*, *supra*, is instructive. The plaintiff sued her former husband. The parties were the parents of the insured decedent. The plaintiff alleged and produced evidence at trial that she was the intended beneficiary of the son's insurance policy, and that the defendant, who sold his

son the policy, ignored his son's request to name the plaintiff as the beneficiary. Instead, the defendant completed the beneficiary form, naming himself, without telling the parties' son. 88 Md. App. at 631-34, 596 A.2d at 667-68. Judge Diana Motz, then of the Maryland Court of Special Appeals, held for the court that the trial judge erred in granting the defendant's motion for judgment at the close of the plaintiff's case on the ground that he alone was the named beneficiary of the son's life insurance policy. *Id*. at 631, 596 A.2d at 667. The appellate court concluded that an "intended" beneficiary who was not a named beneficiary had standing to sue for breach of contract under the third party beneficiary doctrine, where the evidence showed the insured had intended to name the plaintiff, rather than the defendant, as beneficiary to the policy. *Id*. at 637-68, 596 A.2d at 670.

*Milbourne*, *supra*, 181 F. Supp. 2d 466. ECF 18-1 at 7-8, also provides guidance. There, the evidence showed that the insured had attempted to change the named beneficiary to someone other than plaintiff, but there was some question as to whether the insured had effectively completed the change. *Id*. at 468. Judge Andre Davis, then a member of this court, held that "as the original named beneficiary," there was "no doubt" that plaintiff had "standing as a third party beneficiary to sue for breach of contract." *Id*. He cited *Parlette* for that assertion. *Id*. And, he granted summary judgment to the insurer in *Milbourne*, based on a change of beneficiary form executed by the insured before he died. *Id*. at 469-70.

The cases on which plaintiff relies are distinguishable from this case. In *Parlette*, the question of who the insured actually intended to name was at the heart of plaintiff's claims. In *Milbourne*, although plaintiff conceded that the insured intended to change the named beneficiary, plaintiff's claims turned on whether the insured had effectively done so. In both

cases, the identity of the beneficiary was in dispute and, in both cases, each plaintiff had a plausible claim to being the actual beneficiary, *i.e.* the person to whom the insurance company should pay the claim.  Thus, it may be said that each plaintiff had standing to sue as if she were the named and intended beneficiary, because the standing question was inextricably bound with the merits of each plaintiff's claims.  Put another way, the plaintiff's status was the core question in each case.

Here, in contrast, it is undisputed that Mr. Germenko *intended* Higdon, as Trustee of the Trust, to be the named beneficiary, and that Mr. Germenko effectively executed the change in named beneficiary from the Germenkos to Higdon.  *See*, *e.g*, ECF 18-5, ECF 18-6 (change of beneficiary and ownership forms provided by plaintiff, naming Higdon).  And, the contract claim, as discussed, focuses on whether the Policy was in effect at the time of Mr. Germenko's death, that is, on whether any benefits are owed at all, *not* on the payee(s) of the benefits. Accordingly, the holdings in *Parlette* and *Milbourne* do not reach the facts of this case.

Moreover, Mr. Germenko's choice to name Higdon, as Trustee of the Trust, effected more than a mere name-swap.  By naming Higdon, rather than the Germenkos, Mr. Germenko expanded the number of persons to whom the benefits of the Policy would eventually flow, and prioritized the order of payment, turning the Geremenkos' interests into contingent interests. According to the copy of the Trust Agreement provided by plaintiff, *supra*, each of the originally named plaintiffs may receive some of the benefits of the Policy, but the benefits they may receive are conditional on the prior satisfaction of payments to "the Grantor's spouse" from the same fund.  ECF 18-4 at 13-14.  As discussed, according to plaintiff, "the Grantor's spouse" at

the time of the creation of the Trust and at Mr. Germenko's death was a woman named Catherine

Germenko, ECF 25-1 at 4, who was not one of the original plaintiffs.  *See* State Complaint.

In light of the facts that Mr. Germenko unambiguously intended to name Higdon, Trustee

of the Trust, as beneficiary of the Policy, and that this change effectively made the Germenkos

contingent beneficiaries to the Policy funds, I cannot say that it clearly appears Mr. Germenko

intended to recognize the Germenkos as the "*primary* parties in interest" to the life insurance

contract.  *See Shillman*, 249 Md. at 688, 241 A.2d at 575 (emphasis added).  Rather, when Mr.

Germenko named the Trust as beneficiary to the Policy, the Germenkos became incidental

beneficiaries to the Policy.  Accordingly, the Germenkos did not have standing as intended

beneficiaries when they filed suit in State court or when the case was removed to this Court.  *See*

*Parlette*, 88 Md. App. at 637, 596 A.2d at 670.

### 3.

Alternatively, plaintiff argues that the Germenkos had standing as beneficiaries of the

Trust who are entitled to immediate distribution of the Trust property involved (*i.e.*, the Policy

benefits), citing § 107(2)(a) of the Restatement (Third) of Trusts (2012).  Opposition at 10-11;

ECF 25-1 (supplemental briefing).

It is well established that, generally, only a trustee has standing to bring actions at law on

behalf of a trust, because the beneficiaries' interests traditionally exist only in equity.  *See*, *e.g.*,

*Kann v. Kann*, 344 Md. 689, 703, 690 A.2d 509, 516 (1997) ("Trusts are, and have been since

they were first enforced, within the peculiar province of courts of equity.") (citation omitted);

*Latrobe v. Mayor & City Council of Baltimore*, 19 Md. 13, 15 (1862) ("At law, the [trust

beneficiary] is ignored altogether; a Court of Law recognizing only the legal owner of the estate.

At common law, the legal estate in the hands of the trustee has the same incidents as if the trustees were the usufructory owner, subject, nevertheless, to the claims in equity of the [trust beneficiaries].") (citations omitted).   Nonetheless, over time, the common law has come to recognize certain exceptions, as summarized in § 107 of the Restatement.[7]   Section 107(2)(a) states: "A beneficiary may maintain a proceeding related to the trust or its property against a third party only if: (a) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved."

Higdon asserts that Barbara Germenko Wright, in her individual capacity, and Deborah Ann Germenko Tharp, as the representative of the estate of her late mother, Winifred Germenko, are both entitled to immediate distribution of the Trust property.   As discussed, the Trust property consists only of the Policy benefits.  Opposition at 10-11.  Plaintiff points to §§ 2.03(b) and (a) in the copy of the Trust Agreement he provided.  *Id.*  In relevant part, these sections are quoted in the Factual Background.

Plaintiff argues that all conditions precedent, as stated in §§ 2.02 and 2.03, have been met, such that Barbara, in her individual capacity, and Deborah, as representative of the estate of her mother (Winifred Germenko), are entitled to immediate distribution of the Policy benefits (if or when they are paid by the Insurers).  Opposition at 10-11; ECF 25-1 at 4-7.  Plaintiff explains that "the Grantor's former wife," as referred to in the Trust Agreement, is Winifred Germenko, ECF 25-1 at 4, and "the Grantor's spouse" is Catherine Germenko.  *Id.*   He explains that Catherine Germenko "elected not to participate in this litigation and indicated to Plaintiff prior to

---

[7] The Maryland Court of Appeals has relied on the Restatement (Third) of Trusts.  *See*, *e.g.*, *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 432 Md. 292, 315 n.36, 68 A.3d 843, 858 n.36; *Hastings v. PNC Bank*, 429 Md. 5, 24, 54 A.3d 714, 725 (2012).

June 13, 2013 (the date that this litigation was commenced) that she did not wish to pursue any claim to the life insurance proceeds at issue in this case ….” *Id*. at 5.  He also asserts that “Catherine’s actions constitute a disclaimer of her interest under Section 3.04(a) of the Trust Agreement,” which means that her “‘death’ is ‘presumed’ for the purposes of the commencement of this action, and the provisions of Section 2.03 are triggered.”  ECF 25-1 at 5.

Plaintiff’s only evidence regarding Catherine Germenko’s wishes is his own affidavit, ECF 25-2, which states:

> 4. At the time of the Trust’s creation in 1991, Mr. Germenko was divorced from Winnifred (sic) Germenko and was remarried to Catherine Germenko.  Mr. Germenko was married to Catherine when he passed away in 2010.

> 5. Prior to June 13, 2014, Catherine Germenko informed me that she did not wish to pursue any claim to the life insurance proceeds at issue in this case.

Defendants contend that, under Maryland law, “only a trustee has standing to sue on behalf of a trust,” without exception.  Memo at 5 (citing *Limouze v. M.M. & P. Maritime Advancement, Training, Educ. & Safety Program*, 397 F. Supp. 784, 789-90 (D. Md. 1975) (considering capacity to sue) and *Allegis Grp., Inc. Contrs. Health Plan Trust v. Conn. Gen. Life Ins. Co.*, JFM-04-16, 2004 WL 1289862, at *1-4 (D. Md. June 10, 2004) (same)).  They also argue, *inter alia*, that the originally named plaintiffs are not entitled to immediate distribution because Catherine Germenko’s alleged oral disclaimer, allegedly reported to Higdon, is not sufficient to disclaim her interest under Maryland law.  ECF 27 at 4-5; *see* Md. Code (2011 Repl. Vol.), § 9-202(c) of the Estates & Trusts Article (“E.T.”).  E.T. § 9-202(c) states that, to be effective, “a disclaimer must,” among other things, be “in writing or other record” and “signed by the person making the disclaimer.”  Catherine Germenko’s alleged disclaimer, supposedly reported to Higdon, does not meet either of those requirements.

Defendants have the winning argument.  Even assuming that Maryland common law would recognize an exception as stated in § 107 of the Restatement to the general rule that only a trustee has standing to bring actions at law on behalf of a trust, there is no evidence that Catherine Germenko has disclaimed her interest in the funds at issue in a legally effective manner.  As discussed, per the Trust Agreement, the Germenkos' interests are contingent on the fulfillment of certain conditions precedent related to Catherine Germenko's Trust interest.  Because it appears that Catherine Germenko has neither claimed nor disclaimed that interest, the Germenkos cannot possibly be entitled to immediate disbursement of Trusts funds, now or when they filed this case.  Accordingly, when this case was filed and when it was removed, the Germenkos could not have had standing as Trust beneficiaries.

**Conclusion**

For the foregoing reasons, I will GRANT defendants' Motion (ECF 22), in part.  It is clear from the State Complaint and the submissions filed by plaintiff that the original plaintiffs on the State Complaint, the Germenkos, have not suffered an injury within the meaning of Article III, and, thus, this Court lacks subject matter jurisdiction to hear the case.  However, to the extent defendants seek dismissal, I shall DENY the request.  Pursuant to 28 U.S.C. § 1447(c), I shall remand the case to the Circuit Court for Howard County for all further proceedings.[8]

A separate Order follows, consistent with the Memorandum Opinion.

Date: December 8, 2014                                         /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge

---

[8] In that court, it would appear that the suit can be amended to substitute Higdon as the plaintiff.